UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CARLOS JOSE MARTINEZ, individually and on             Case No. 23-cv-05901
behalf of all others similarly situated,


                          Plaintiff,              **COLLECTIVE AND CLASS
                                                  ACTION COMPLAINT**

              v.

FINGER MANAGEMENT CORP., PARKVIEW
APARTMENTS, LLC, JOHN VOLANDES, and
PETER VOLANDES,

                          Defendants.
-----------------------------------------------------------------X

   Plaintiff Carlos Jose Martinez ("Plaintiff" or "Representative Plaintiff"), individually as

against defendants Parkview Apartments, LLC ("Parkview"), John Volandes, and Peter

Volandes, (collectively, the "Volandes Defendants"), and individually and on behalf of all

others similarly situated as against defendant Finger Management Corp. ("Finger Mgmt."), [1] by

his attorneys, Rapaport Law Firm, PLLC and Miller Law, PLLC, alleges as follows:

## INTRODUCTION

**Summary of Plaintiff's Claims, the Proposed Collective, and the Proposed Class:**

   1. Defendants in this action are owners and managers of apartment buildings (the

"Buildings") who refuse to pay premium overtime wages to their largely immigrant

workforce of maintenance workers (porters, superintendents, handymen and other manual

laborers) and require that their workers spend time performing work without remuneration,

including overtime work without payment of premium overtime pay.

   2. Many of the manual laborers who maintain Defendants' buildings speak

limited English, and they are unlikely to be familiar with the American legal system, let

alone their rights under federal and state wage and hour laws.

---

[1] The Volandes Defendants and Finger Mgmt. are collectively referred to as the "Defendants."

3.      Furthermore, these low-wage workers undoubtedly grasp that they are replaceable. If they are residential superintendents, the prospect of losing their jobs virtually guarantees that they will lose their superintendent's apartment where they reside.

4.      Therefore, due to fear of retribution and unawareness of their rights under wage and hour law, as well as other factors, Defendants' manual labor workers are unlikely to independently take legal action to enforce their rights under wage and hour laws.

5.      Therefore, this proceeding, which is brought, as against defendant Finger Mgmt., as a putative collective under the Fair Labor Standards Act (FLSA) and R. 23 class for New York Labor Law (NYLL) violations, is probably the only practical opportunity for Defendants' workers to obtain compensation for the unpaid wages they are owed.

6.      Plaintiff brings this complaint: (a) against all of the Defendants on behalf of himself; and (b) as against Finger Mgmt., all other persons similarly situated who are, were, or will be employed by as superintendents, porters and handymen and/or in similar manual labor positions at buildings in New York that were or are owned, managed and/or controlled by Finger Mgmt. within the applicable statutory periods.   For convenience, all of these buildings, which are believed to number at least one hundred twenty (120), are hereinafter collectively referred to as the "Buildings" or the "Finger Mgmt. Buildings."

7.      Plaintiff brings his First Cause of Action: (a) on his own behalf against all Defendants for Defendants' failure to pay overtime wages required by the FLSA 29 U.S.C. § 201, *et seq.* (the First Cause of Action); and (b) as against Finger Mgmt., also on behalf of a proposed collective of superintendents (the "FLSA Collective") who are, were or will be employed at the Buildings commencing three years prior to the commencement of this action to the date of final judgment.

8.      Plaintiff brings his Second through Fifth Causes of Action: (a) on his own behalf against all Defendants for violations of the NYLL (the "NYLL Claims"); and (b) as

against Finger Mgmt., also on behalf of a proposed Rule 23 Class (the "NYLL Class") of superintendents, porters, handymen, and similar building workers who are, were or will be employed at the Buildings commencing six years prior to the commencement of this action to the date of final judgment.

9.      Defendants violated both the FLSA and NYLL by failing to pay overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

10.      In addition, Defendants violated the NYLL by, *inter alia,* failing to provide wage notices and wage statements required by NYLL, Article 6, §§195(1) and 195(3) and requiring that superintendents, porters and handymen pay for tools used solely for the benefit of the defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

11.      Defendant Finger Mgmt. is a property management firm that, at all relevant times, jointly controlled the payment of wages, terms, and conditions of Plaintiff's employment, as well as the wages, terms, and conditions of the FLSA Collective and NYLL Class.

12.      Upon information and belief, Finger Mgmt. manages approximately 120 buildings in the New York City area, and in that capacity, Finger Mgmt. determines the terms and conditions of one hundred (100) or more superintendents, porters and handymen.

13.      Commencing on or about November 1, 2019, the portfolio of Finger Mgmt. Buildings included (and, upon information and belief, it continues to include) publicly-subsidized buildings for low-income residents owned and controlled by the Volandes Defendants, namely: (a) 1660 Crotona Park East, Bronx, New York ("1660 Crotona"), where Plaintiff worked as a superintendent; (b) 300-304 East 162nd Street, Bronx, New York ("300-304 East 162nd"); and (c) 1680 Crotona Park East, Bronx, New York ("1680 Crotona") (collectively, the foregoing buildings are referred to as the "Volandes Buildings").

14.    The full extent of the portfolio comprising the Finger Mgmt. Buildings during the limitations period will be ascertained through discovery.

15.    Upon information and belief, it is conservatively estimated that there are more than one hundred (100) members of both the proposed NYLL Class and FLSA Collective. This estimate is based on: (a) the number of Finger Mgmt. Buildings known at this juncture; (b) the size of the Finger Mgmt. Buildings, including their respective numbers of residential and commercial units; and (c) estimated turnover of building maintenance workers.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction of this action pursuant to the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq*. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331) and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367, because these claims are so related to and closely intertwined with the FLSA claims that they form part of the same case or controversy.

17.    Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.

18.    A review of Defendants' filings with the New York City Department of Housing Preservation and Development ("HPD") and Defendants' filings in other legal proceedings (including dozens of eviction proceedings commenced by Defendants in New York courts) shows that:  (a) The apartment  buildings owned by the Volandes Defendants are primarily, if not exclusively, located in Bronx County; and (b) Finger Mgmt. maintains offices for the conduct of business in the Southern District, including an office at 205 East 42nd Street, 6th Floor, New York, NY 10017.

(https://hpdonline.nyc.gov/hpdonline/building/60001/overview) (accessed June 21, 2023)

4

19.    This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

20.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

## THE PARTIES

**Plaintiff**

21.    Plaintiff is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

22.    Beginning in or about November 2019 continuing through on or about November 23, 2022, Plaintiff was employed by Defendants as a superintendent at 1660 Crotona.

23.    Plaintiff performed duties that were beyond superintendent responsibilities, such as plastering, carpentry, painting, flooring replacement, repairing fallen sheetrock, and more.

24.    Plaintiff also performed work at other Finger Mgmt. Buildings at the direction of Finger Mgmt.'s property managers.

25.    As alleged in further detail below, in a typical week, Plaintiff's basic work schedule entailed working seven days per week, for a minimum of 55.5 hours, including time spent on call and/or handling emergencies.  However, with limited exceptions, Plaintiff was paid wages for only his first forty (40) hours of work each week.

**Defendants**

    **Peter Volandes and John Volandes:**

    26.    Peter Volandes is an adult, natural person who, upon information and belief, resides in New York County, New York.

    27.    John Volandes is an adult, natural person who, upon information and belief, resides in Suffolk County, New York.

    28.    At all relevant times, individual defendants John and Peter Volandes exercised joint, direct and/or indirect ownership and control over 1660 Crotona, a 67-unit apartment building where Plaintiff worked as a superintendent.

    29.    Upon information and belief, John and Peter Volandes maintain a principal place of business at 4400 Second Avenue, Brooklyn, NY 11232.

    30.    Upon information and belief, at all relevant times, John and Peter Volandes were (and they continue to be) the most senior executives and owners with the most significant ownership interests of Parkview, which is the entity that nominally holds title to 1660 Crotona on their behalf.

    31.    Upon information and belief, John and Peter Volandes were also (and they continue to be) the most senior executives and owners of the limited liability companies that nominally hold title to 300-304 East 162nd and 1680 Crotona.

    32.    Upon information and belief, records filed with the HPD identify Peter Volandes as the most senior officer of defendant Parkview.

    33.    In other publicly-filed documents, including mortgage instruments that were filed with the New York City Department of Finance, defendant John Volandes is identified as the "Managing Member" of Parkview, whose address is identified as c/o Volmar Construction Inc., (4400 Second Avenue, Brooklyn, NY 11232), a construction company

that, upon information and belief, John Volandes founded several decades ago, and of which he is the President.

34.    Upon information and belief, John and Peter Volandes are liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

35.    John and Peter Volandes, together with Finger Mgmt., determined the terms of employment, wages and compensation of Plaintiff, established Plaintiff's duties and schedule, and had ultimate decision-making authority for the hiring and firing of employees.

**Parkview Apartments:**

36.    Parkview Apartments is a corporation organized and existing under the laws of the State of New York.

37.    Upon information and belief, Parkview Apartments has a principal place of business at c/o Volmar Construction Inc., 4400 Second Avenue, Brooklyn, New York 11232.

38.    Parkview Apartments nominally holds title to 1660 Crotona on behalf of John and Peter Volandes.

**Finger Management Corp.:**

39.    Upon information and belief, Finger Mgmt. was  directly involved and jointly responsible for determining the rates of pay, hours of work, and other terms and conditions of employment of Plaintiff and similarly situated building maintenance workers.

40.    At all relevant times, Finger Mgmt. managed 1660 Crotona and was its designated managing agent.

41.    Finger Mgmt. describes itself as "...a leading full-service property management firm..." in which they "...manage more than 120 commercial, residential cooperative and condominium, and low-income HDFC properties throughout the Bronx,

Manhattan, Brooklyn, Queens and Westchester." (https://www.fingermanagement.com/) (accessed June 21, 2023).

42.     Upon information and belief, Finger Mgmt. is a corporation organized and existing under the laws of the State of New York.

43.     Upon information and belief, based on a review of the HPD's property registration page for 1660 Crotona, Finger Mgmt. maintains a place of business at 205 East 42nd Street, 6th Floor, New York, New York 10017.

(https://hpdonline.nyc.gov/hpdonline/building/60001/overview) (accessed June 21, 2023).

44.     Finger Mgmt. exercises centralized management of the Volandes Buildings, as well as approximately 115 other buildings, in which capacity Finger Mgmt. is the employer and/or joint employer of workers at the Buildings.

45.     Upon information and belief, commencing on or about November 1, 2019, Finger Mgmt. assumed responsibility for preparing, preserving, and maintaining payroll and wage records relating to employees performing work at the Volandes Buildings.

46.     Upon information and belief, Finger Mgmt. manages and oversees the wage practices of superintendents, porters and other maintenance workers at more than one hundred twenty (120) buildings in New York City.

47.     Finger Mgmt. and the Volandes Defendants co-managed and supervised Plaintiff, and in connection with its managerial role, Finger Mgmt. determined Plaintiff's work hours and issued instructions to him regarding tasks to be performed.

## FACTUAL ALLEGATIONS

### Policies of Violating the Wage Rights of Building Workers

48.     At all relevant times, Defendants required Plaintiff and similarly situated building workers to work in excess of forty (40) hours per week without paying overtime

compensation at one and one-half times the regular rate of pay as required by the FLSA and NYLL.

49.     During the time period relevant to this case, all of the Defendants were Plaintiff's joint employers.

50.     Defendants collectively determined the terms and conditions of Plaintiff's employment, including, *inter alia*, Plaintiff's responsibilities, compensation, and hours of work.

51.     Upon information and belief, Finger Mgmt. applied common employment practices, policies and procedures to superintendents and maintenance workers working at the Buildings, including, *inter alia*, willfully refusing to pay building maintenance workers – superintendents, porters and handymen – for all hours worked beyond the first forty (40) hours of work per work.

52.     Finger Mgmt. carried out their common employment practices, policies and procedures by, *inter alia*, issuing directives that were formulated, communicated, disseminated and/or implemented by Finger Mgmt.'s property managers and/or assistant property managers.

53.     Defendants required that superintendents remain on-call at their respective buildings from early morning through late at night, without making any arrangements for superintendents to report and/or be paid wages for their on-call time except on extremely limited occasions.

54.     Among other things, the requirement that superintendents remain on-call was intended to ensure their availability to perform snow removal, provide building access to emergency responders, address leaks, handle tenant requests, and perform other unanticipated tasks.  However, regardless of the time of day or night and/or day of the week when such work was needed, superintendents were, with limited exceptions, paid fixed

weekly and/or monthly sums, and they were not paid overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA and NYLL.

55.    Furthermore, Defendants had a policy and practice of requiring that superintendents, porters and handymen pay for tools used solely for the benefit of Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

56.    Defendants also had a common practice of issuing pay statements to workers that did not comply with the NYLL, including, among other omissions, failing to accurately set forth hours worked and/or identifying the manner in which employees' weekly pay was calculated.

57.    Upon information and belief, Finger Mgmt. ran the Finger Mgmt. Buildings, including the Volandes Buildings, as one operation, with common wage procedures and policies applicable to all maintenance workers.

58.    Finger Mgmt.'s maintenance workers, including superintendents, were regularly assigned to simultaneously perform work at more than one building. For example, in addition to Plaintiff's duties at 1660 Crotona, Plaintiff was dispatched to nearby buildings, including 819 E. 173rd Street, Bronx, New York and 1680 Crotona, to assist other superintendents and/or fill in for workers.

59.    At all relevant times, Finger Mgmt. functioned, and it continues to function, as an integrated real estate enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, all for the purpose of operating and managing residential, mixed-use and commercial buildings.

60.    Upon information and belief, Finger Mgmt. applied common employment practices, policies and procedures to superintendents, porters and handymen, including, *inter*

*alia*, their practice of failing to pay overtime pay at 1.5 times the regular rates of pay for overtime hours (*i.e.*, hours worked above the first forty hours per week).

61.    Upon information and belief, Finger Mgmt. oversees building maintenance personnel (superintendents, porters, and handymen) at approximately 120 buildings through its team of nine property managers and five assistant property managers, who, upon information and belief, are based at the same office, from which Defendants process payroll and issue paychecks.

62.    Finger Mgmt.'s centralized operation of its approximately 120-building portfolio is reflected by its corporate website. For example, Finger Mgmt. maintains a single "Work Order Request" page that, upon information and belief, allows for the submission of work requests for any of the Finger Mgmt. Buildings.
(https://www.fingermanagement.com/work-order/) (accessed June 29, 2023).

**Interstate Commerce**

63.    At all relevant times hereto, Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiff as a superintendent. This employment position engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

64.    Among other forms of interstate activities, Defendants operate the Buildings through the extensive use and handling of goods and materials, such as cleaning supplies, paint, tools, and similar items, all of which travelled in interstate commerce, and Plaintiff personally used such materials in performing his daily job duties.

65.    In performing his routine job duties, Plaintiff was frequently called upon to handle and install faucets, carbon monoxide detectors, window guards, tiles and other items, all of which, upon information and belief, had been moved in interstate commerce.

66.    At all times applicable herein and upon information and belief, Defendants' operation and control of the Buildings involved extensive business dealings with mortgage companies, banks, insurance companies, vendors, and other service providers both within and outside the State of New York.

67.    At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

68.    At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL, §§ 2 and 651(5) and (6).

## Enterprise

69.    Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

70.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

71.    Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions and the working conditions of similarly situated superintendents, porters and handymen.

72.    Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

73.    In the alternative, Defendants constitute a single employer of Plaintiff and similarly situated superintendents, porters and handymen.

**Collective and Class Action Allegations**

**The Proposed FLSA Collective.**

74.     Pursuant to 29 U.S.C. 207 & 216(b), Plaintiff brings his FLSA overtime claim, the First Cause of Action, on behalf of himself and, as against Finger Mgmt., the FLSA Collective, which consists of:

> All persons who work or have worked as superintendents at Finger Mgmt. Bldgs. commencing three years prior to the commencement of this action to the date of final judgment in this matter (the "Collective Action Members").

75.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were not exempt from the FLSA's overtime provisions, and they were subjected to Finger Mgmt.'s practice of not paying legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

76.     Plaintiff and the 100-plus Collective Action Members have substantially similar job duties and are paid pursuant to similar, if not the same, payment structure.

77.     Plaintiff's consent to sue under the FLSA is annexed hereto as Exhibit 1.

**NYLL Class Action Allegations.**

78.     Plaintiff brings the Second through Fifth Causes of Action, the NYLL Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at buildings in New York that were owned, managed and/or controlled by Finger Mgmt. commencing six years prior to the commencement of this action to the date of final judgment in this matter.

79.     The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

80.     There are more than one hundred members of the NYLL Class.

81.     Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class.

82.     Plaintiff and the NYLL Class have been injured in that were deprived of overtime pay, and forced to pay for their own tools of the trade, due to Finger Mgmt.'s common policies, practices, and patterns of conduct.

83.     Finger Mgmt.'s corporate-wide policies and practices affected everyone in the NYLL Class similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

84.     Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

85.     Plaintiff is represented by attorneys who are experienced and competent in both class and collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases, particularly in cases that, as here, involve claims of superintendents and building maintenance workers.

86.     A class action is superior to other available methods of fair and adjudication of NYLL Claims, particularly because many of the putative members of the NYLL Class do not speak English, are unlikely to be familiar with their rights under the NYLL, may be fearful of suffering retaliation if they commence a lawsuit, and may not have the financial resources to vigorously pursue a lawsuit.

87.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

> (a) whether Finger Mgmt. paid the NYLL Class premium overtime compensation for all hours worked above forty in a workweek;
>
> (b) whether Finger Mgmt. required that superintendents, porters and handymen pay for their tools used solely for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry. 12 N.Y.C.R.R. § 141-1.9;
>
> (c) whether Finger Mgmt. furnished Plaintiff and the NYLL Class with accurate wage notices and wage statements as required by the NYLL.

**Factual Allegations Relating to Plaintiff's Wage Claims:**

88.    Plaintiff first began working for Defendants in or about November 2019, shortly after Finger Mgmt. assumed management of the Volandes Buildings.

89.    Although Defendants designated Plaintiff an hourly employee, they did not pay Plaintiff for every hour he worked.

90.    An hourly pay rate ($15.00) was set forth on Plaintiff's weekly earnings statements; but this was a willful fiction because Defendants only paid Plaintiff for the first forty hours Plaintiff worked each week, even though Plaintiff's regular weekly schedule entailed fifty-five and one-half (55.5) hours of work.

91.    1660 Crotona's prior superintendent, Waly Ferreira, was subjected to similar wage violations (*i.e.*, deprivation of overtime pay despite having worked far in excess of forty hours per week) and consequently brought a wage and hour lawsuit against the Volandes Defendants.

92.    Therefore, Defendants were, at all relevant times, aware that they were violating applicable wage and hour laws by forcing Plaintiff to work more than forty hours per week without premium overtime pay.

93.    Plaintiff's duties included, among other tasks, cleaning, mopping, repairing, plastering, plumbing, accepting oil deliveries and supplies, communicating with tenants, sweeping the sidewalk, sorting and removing recycling and garbage, cleaning the elevator, removing discarded items from newly-vacated apartments, replacing pipes, installing kitchen appliances including stoves and refrigerators, fixing bathroom and kitchen faucets, handling leaks, repairing radiators, fixing windows, replacing fire alarms in apartments, addressing issues with the building's waste compactor, replacing sinks, communicating with contractors, and providing access to emergency responders, including police, ambulance and fire personnel.

94.    Plaintiff was required to be on-call at all hours to address reoccurring emergent issues at 1660 Crotona, including, solely by way of example: handling clogged toilets; in the event of overnight leaks, investigating and shutting off the flow of water; helping residents who misplaced keys gain access to their apartments; and shoveling snow.

95.    Although Defendants gave Plaintiff the title of "superintendent," Plaintiff's duties extended far beyond superintendent duties.  For example, due to the age of 1660 Crotona (it was constructed in or about 1926) and its years-long neglect, Plaintiff had to perform construction-related tasks, such as repairing fallen sheetrock.

96.    Defendants refused to take basic measures to keep 1660 Crotona's building systems in working order. For example, Defendants claimed that they lacked sufficient funds to fix 1660 Crotona's garbage compactor.  As a result, Plaintiff spent hours using a metal hook to pull out garbage from the compactor by hand.  This, in turn, significantly increased the number of hours Plaintiff was forced to work on Saturdays and Sundays.

97.    Plaintiff's duties were particularly onerous because Defendants refused to provide a porter to assist him, even though 1660 Crotona has approximately 68 units and is six stories.

98.    Tenants would contact Plaintiff at all hours of the day and night, seven days per week.

99.    Plaintiff's regular work schedule (not accounting for emergent issues that arose at night and on weekends or hours spent on-call) was seven days per week, as follows: (a) weekdays: 7:00 a.m. to approximately 4:30 p.m.; and b) 4 hours each on Saturdays and Sundays.  Therefore, Plaintiff's regular work schedule entailed 55.5 hours of work per week.

100.    When there were emergencies at 1660 Crotona, Plaintiff worked more than 55.5 hours per week.  Solely by way of example, in or about April 2021, there was a plumbing emergency affecting apartment 1B at 1660 Crotona on a Sunday evening, which involved a clog in the building's basement.  Plaintiff attended to the emergency overnight. This resulted in Plaintiff working more than 60 hours during the foregoing week, rather than his usual 55.5 hours.  Nonetheless, he was not paid premium overtime compensation.

101.    Defendants did not instruct Plaintiff to record the number of hours that he worked each week.  Instead, they compensated him with a flat sum ($600 per week), which covered only his first forty hours of work per week.

102.    Almost without exception, the paystubs given to Plaintiff recited the fiction that he worked precisely forty (40) hours per week.  In fact, Plaintiff was not asked to sign in or out of work each day.  In fact, he was given no method to do so.

103.    The numbers of hours recited on Plaintiff's paystubs (on almost every stub, exactly "40 hours") were a willful fiction that, upon information and belief, Defendants intended to obfuscate the extent to which they underpaid Plaintiff.

104.    In fact, Defendants gave Plaintiff no contemporaneous method to keep track of his hours worked each day.

105.    On limited occasions, Plaintiff received extra pay for emergency projects.  But these occasions were rare, and mostly took place for a brief period after Plaintiff made a

complaint to a government agency regarding Defendants' failure to pay overtime compensation.

106.    But even during the foregoing brief period, Defendants would pay overtime compensation to Plaintiff only for emergency projects beyond Plaintiff's regular 55.5 hour weekly schedule.

107.    Therefore, at no point during Plaintiff's employment was Plaintiff paid any compensation for the 15.5 overtime hours he worked every week as part of his regular schedule. In fact, he was paid no compensation whatsoever for these 15.5 hours of overtime he worked every week.

108.    Plaintiff was subjected to unlawful wage deductions, including being required to pay for work-related expenses out of his own wages without reimbursement.    These tools that Plaintiff provided, for which he was never reimbursed, included, *inter alia*: saw; drill; and tools for electrical work.

### AS AND FOR A FIRST CAUSE OF ACTION
**Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(Individually against All Defendants and also on Behalf of**
**the FLSA Collective against Finger Mgmt.)**

109.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

110.    As described above, Plaintiff worked in excess of forty hours in a workweek.

111.    As described above, Defendants did not properly compensate Plaintiff for all hours he worked in excess of forty in a workweek, as required by the FLSA.

112.    Plaintiff is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Collective Members, as part of their employment at the Buildings, to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

113.    In the performance of their duties for Defendants, members of the FLSA Class routinely worked more than forty (40) hours per week, yet did not receive premium overtime compensation for the work.   The precise number of unpaid overtime compensation will be proven at trial.

114.    Plaintiff proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

115.    Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

116.    Defendants have a policy and practice of refusing to pay overtime compensation to Plaintiff and other building workers.

117.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Collective Members similarly situated who file written consents to joinder in this action, for all unpaid overtime wages owed by Defendants to Plaintiff and the FLSA Collective, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Individually against All Defendants, and also on Behalf
### of the NYLL Class, FRCP Rule 23, against Finger Mgmt.)

118.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

120.    Defendants employed Plaintiff and other superintendents for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

121.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

122.    Defendants have a policy and practice of refusing to pay overtime compensation at 1.5 employees' regular rates of pay to building workers.

123.    As a consequence, Plaintiff and members of the NYLL Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### 12 N.Y.C.R.R. § 2.10(a)
### (Individually against All Defendants, and also on Behalf
### of the NYLL Class, FRCP Rule 23, against Finger Mgmt.)

124.    Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

125.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiff and the NYLL Class by requiring Plaintiff and other building workers to spend their own money on work-related expenses, including tools of the trade to complete mandated work.

126.    The foregoing unlawful deductions further reduced Plaintiff's wages (and the wages of other building workers) below the amounts required by the NYLL and FLSA.

127.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of NYLL Class Members, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from defendants' unlawful and willful conduct as the Court deems just and proper.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**Violation of NYLL § 195(3)**
**(Individually against All Defendants, and also on Behalf**
**of the NYLL Class (FRCP Rule 23) against Finger Mgmt.)**

128.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

129.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

130.    Defendants willfully failed to provide Plaintiff and NYLL Class Members with wage statements at the end of every pay period that correctly identified the number of overtime hours worked and other information as required by NYLL § 195(3).

131.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices**
**Violation of NYLL § 195(1); Statutory Damages NYLL § 198**
**(Individually against All Defendants, and also on Behalf**
**of the NYLL Class, FRCP Rule 23, against Finger Mgmt.)**

132.    Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

133.    The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

134.    Defendants willfully failed to furnish Plaintiff, at the time of hiring or when there was a change to his rate of pay, with wage notices required by NYLL § 195(1).

135.    Among other omissions, Defendants' wage notices at the time of hire failed to set forth the physical address of the employer(s) and/or the overtime rate of pay.

136.    Because the WTPA was in effect when Plaintiff commenced his employment with Defendants, Plaintiff is entitled to bring this private cause of action for statutory damages for Defendants' failure to provide Plaintiff with a legally valid wage notice when Defendants first became Plaintiff's employer.

137.    Due to Defendants' violation of NYLL § 195(1), Plaintiff and the NYLL Class are each entitled to recover from Defendants $50.00 per work day that the violations occurred or continue to occur, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

138.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of the NYLL Class, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Carlos Jose Martinez, on behalf of himself against all Defendants and on behalf of members of the FLSA Collective and NYLL Class against Finger Mgmt., respectfully requests that this Honorable Court:

1.      Designate this action as a collective action against Finger Mgmt. on behalf of the FLSA Class members and order the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the FLSA Collective Members.

2.      Designate Plaintiff as representative of the FLSA Collective.

3.      Designate Plaintiff's counsel as counsel for the FLSA Collective.

4.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the NYLL Class members with respect to all of the NYLL Claims against Finger Mgmt.

5.      Appoint Plaintiff as representative of the NYLL Class.

6.      Appoint Plaintiff's counsel as Class Counsel for the NYLL Class.

7.      Toll the statutes of limitations.

8.      Declare, adjudge and decree that Defendants willfully violated the overtime wage provisions of the FLSA as to the Plaintiff and the FLSA Collective.

9.      Declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to Plaintiff and the NYLL Class.

10.      Declare, adjudge and decree that Defendants willfully violated their legal duties to pay accrued wages to Plaintiff and the NYLL Class.

11.    Declare, adjudge and decree that Defendants willfully violated their legal duties by requiring maintenance workers to pay for tools used solely for the benefit of Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

12.    Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiff and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b).

13.    Award Plaintiff and all those similarly situated attorneys' fees, costs and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

14.    Award Plaintiff and the NYLL Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law.

15.    Award Plaintiff and the NYLL Class of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d).

16.    Award Plaintiff and the NYLL Class statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b).

17.    Award reasonable attorneys' fees and costs of the action.

18.    Such other relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York             Respectfully submitted,
       July 10, 2023                RAPAPORT LAW FIRM, PLLC

                              By:   */s/ Marc A. Rapaport*
                                    Marc A. Rapaport
                                    80  Eighth Avenue, Suite 206
                                    New York, New York 10011
                                    Ph: (212) 382-1600
                                    mrapaport@rapaportlaw.com

and

MILLER LAW, PLLC

/s/ *Meredith R. Miller*

By:    _____

Meredith R. Miller
167 Madison Avenue, Suite 503
New York, New York 10016
Ph: (347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Plaintiff, the Putative Collective,
and Putative Class*