Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

January 22, 2025

**BY ECF**

Magistrate Judge Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    Martinez *et al.* **v. Finger Management Corp.** *et al.*
              Case No. 23-cv-05901 (JPO) (KHP)

Dear Judge Parker:

       This firm is co-counsel to named plaintiff Carlos Jose Martinez ("Martinez") and opt-in plaintiff Renard Boykin ("Boykin") (collectively, "Plaintiffs"), in the above-referenced matter, which was commenced on July 10, 2023, and involves claims for wage and hour violations arising from Plaintiffs' employment as superintendents of residential buildings. We write jointly with defendants, Finger Management Corp. ("Finger"), Parkview Apartments, LLC ("Parkview"), John Volandes, and Peter Volandes (collectively, "Defendants"), to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The fully-executed Agreement is submitted simultaneously with this letter as **Exhibit 1** hereto. Plaintiffs' counsel further requests that the Court approve our requested attorneys' fees and costs. The Agreement provides that Defendants share the cost of a lump sum, gross settlement amount totaling $160,000.00.

       The Agreement reflects a desire by the parties to fully and finally settle Plaintiffs' Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable and equitable. This case was commenced as a putative collective action under the FLSA and putative R. 23 class action as to NYLL claims. Boykin joined the case, having filed his opt-in form on September 9, 2023. *See* ECF No. 20. However, Plaintiffs decided not to move for collective and/or class certification. Therefore, the Agreement solely settles the claims of Plaintiffs. As set forth below, the negotiations that culminated in the Agreement began after the parties exchanged more than two thousand pages of written discovery, and Plaintiffs deposed one

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

of Finger's former property managers. The parties had the information required to reach an informed compromise.

I.  **Introduction.**

As Plaintiffs' claims arise, in part, under the FLSA, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Agreement satisfies all of the foregoing factors.

II.  **Plaintiffs' Summary of Their Factual Allegations and Damage Calculations.**

Martinez asserts claims for unpaid overtime compensation under the FLSA and NYLL. Boykin asserts claims for unpaid minimum wages under the NYLL, and unpaid overtime compensation under the FLSA and NYLL. As explained more fully below, because Plaintiffs were residential janitors, they both face a significant risk that their overtime damages could be reduced as a result of the "janitor exemption" contained in New York's Minimum Wage Order for the Building Service Industry, 12 NYCRR 141 (the "Building Service Wage Order"). In this instance, their potential damages would be lowered because they would no longer have the benefit of the NYLL's six-year limitations period.

A.  **Plaintiffs' Overtime Claims and Estimated Damages Calculations.**

1.  **Martinez.**

Martinez filed his Complaint on July 10, 2023 (ECF No. 1) and an Amended Complaint on November 20, 2023.  *See* ECF Am. Cmpl., ECF No. 36.

Martinez worked for Defendants as the superintendent of 1660 Crotona Park East, Bronx, New York ("1660 Crotona"), a rental apartment building with 68 units, from approximately November 2019 to on or about November 23, 2022.  *See* Am. Cmpl. ¶¶ 22, 96-97. At all times relevant to Martinez' claims, 1660 Corona was managed by Finger on behalf of 1660 Corona's title owner, Parkview. *Id.* ¶ 40. John and Peter Volandes are the principals of Parkview. Martinez alleges that all of the Defendants had the status of his joint employers. *Id.* ¶ 57.  Martinez further alleges that although he had the title of superintendent, his job duties extended beyond those of a superintendent, including renovation and construction work. *See*, Am. Cmpl. ¶ 109.  He alleges that this non-superintendent work increased the number of hours he worked per week.

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

The Amended Complaint alleges that Martinez' regular work schedule (*i.e.*, work time that he devoted to his daily superintendent tasks) entailed working seven days per week as follows: (a) weekdays from 7:00 a.m. to approximately 4:30 p.m.; and (b) four hours each on Saturday and Sundays. *Id.* ¶ 113. Based on the foregoing, Martinez alleges that on average, his regular work schedule entailed 55.5 hours of work per week. However, in addition to his regular duties, Martinez handled emergencies and non-superintendent tasks (such as renovations), which varied each week. Based on his recollection, Martinez estimated that this additional work entailed, on average, an additional five hours of work per week. *Id.* ¶ 114. For purposes of calculating his potential damages, Martinez estimates that he worked 61 hours per workweek.

Although Defendants allowed Martinez to submit requests for overtime compensation (which he occasionally submitted), and they paid him for the time he reported, Defendants provided no reliable method for him to contemporaneously and accurately track his hours. *See* Am. Cmpl. ¶¶ 116, 118. For most pay periods, he was paid precisely $600.00 per week. He avers that his flat weekly pay covered only the first forty hours of work. This resulted in an effective, regular hourly rate of pay of $15.00 ($600 ÷ 40 = $15.00) and an effective overtime hourly rate of $22.50. Based on the foregoing, Martinez estimates that if a jury were to credit all of his allegations, he could potentially recover damages for unpaid overtime of $472.00 for most work weeks ($22.50 x 21 hours), excluding liquidated damages and interest. For weeks when Martinez indisputably received overtime pay (for example, the pay period ending 12/12/21), Martinez' potential overtime damages are lower. Martinez estimates that in the best case scenario (if he is found not to be exempt under the NYLL, and a trier of fact were to credit all of his claims regarding the number of hours he worked), he could potentially recover $71,145.00 in overtime damages. Adding liquidated damages and interest, his overtime claim has a potential (best case) value of $164,958.58.

**2. Boykin.**

From approximately 2018 to September 2022, Boykin worked at buildings managed by Finger in which defendants Parkview and John and Peter Volandes had no interest. Therefore, Boykin asserts claims solely against Finger.

Boykin was primarily assigned to serve as superintendent of 515 West 143rd Street, New York, New York ("515 East 143rd"), a 28-unit co-op building. In addition, for a period of approximately 6 months during the summer and fall of 2021, Boykin was assigned to simultaneously work at 523-527 East 143rd Street, New York, NY ("523-527 East 143rd"). Generally, Boykin was paid a flat weekly salary of $400.00 per week, ostensibly for part-time work weeks consisting of 20 hours. However, Boykin alleges that he not only worked full-time, but also regularly worked overtime. Based on his recollection, Boykin alleges that he typically worked 46 or more hours per week. However, during the approximately six-month period in 2021 when Boykin also performed work at 523-527 East 143rd, Boykin worked more overtime hours, at times exceeding 60 hours. But Finger paid him an additional $500.00 per week during this period.

For the periods when Boykin solely worked as superintendent of 515 East 143rd, Boykin estimates that he is owed:

  (a) under the NYLL, unpaid minimum wages in the amount of $200.00 per week ($15.00 (applicable NY minimum wage) - $10.00 (effective hourly rate based on working full time every week) = $5.00 x 40 = $200), for approximately 148 weeks (for a total of $29,600); and

  (b) under the NYLL and FLSA, unpaid overtime wages in the amount of $225.00 per week ($15.00 x 1.5 = $22.50 x 6 hrs = $135.00), for approximately 148 weeks (for a total of $19,980).

Adding liquidated damages and interest, Boykin places a best-case value of approximately $116,374.16 on his claims.

### 3. Wage Statement and Wage Notice Violations.

Plaintiffs also assert claims for statutory damages under the NYLL for Defendants' failure to provide accurate wage statements. Plaintiffs allege that Defendants failed to provide them with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3). Plaintiffs allege that under NYLL § 198(1-d), they are entitled to statutory damages of $250.00 per work week, up to a cap of $5,000.00. Plaintiffs also assert claims for statutory damages for Defendants' failure to provide them with wage notices at the time of hiring, and upon changes to their salary. Plaintiffs' wage notice and wage statement claims potentially add $10,000 to the value of each of their claims. The success of Plaintiffs' wage statement and wage notice claims would largely hinge on whether Plaintiffs are able to establish that these violations caused concrete injuries, which is uncertain.

### 4. Illegal Deductions / Failure to Reimburse

Plaintiffs assert a claim that they were required, as a condition of employment, to pay for work-related expenses, including tools, in violation of NYLL, Article 19 § 193 and 12 N.Y.C.R.R. § 2.10(a). At this early juncture, before any opportunity for further discovery, it is difficult to discern the extent of the amounts owed and, for purposes of settlement, the above estimated damages do not include a calculation for this claim.

### III. Defendants' Positions.

Defendants assert that Plaintiffs are not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Plaintiffs were the sole janitors in charge of the care and maintenance of their respective buildings, they would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Accordingly, it is Defendants' position that Plaintiffs' overtime claims would, at best, go back two or three years (if willful) pursuant to the FLSA, which would

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

significantly decrease any damages. Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging.

Defendant Finger further disputes that it is the legal employer of either plaintiff. Finger has raised an affirmative defense that it is neither a direct nor joint employer of either Martinez or Boykin.

Defendants also dispute that Plaintiffs were not properly paid overtime wages. First, with regard to Martinez, pay records demonstrate that he was paid 1 ½ times his regular hourly rate of pay for all hours of overtime work that he reported. Boykin was also employed in a part-time capacity, and was properly compensated for all hours worked. Defendants assert that the job duties Plaintiffs were assigned would require substantially fewer hours than the number of hours claimed by Plaintiffs, and that Plaintiffs' assertions regarding the number of hours they worked are unbelievable especially because Plaintiffs were employed in the midst of the Covid crisis when their work hours were greatly reduced. In addition, Defendants assert that Plaintiffs' claimed overtime hours will be refuted by witness testimony. Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

With respect to wage notices and statements, Defendants contend as an affirmative defense that Plaintiffs are not entitled to such statutory damages since Plaintiffs were paid all compensation they were entitled to pursuant to law, and they cannot establish concrete injuries.

Finally, Defendants dispute that either Plaintiff was subject to any unlawful wage deductions or that either personally incurred any business expenses, let alone were not properly reimbursed for such expenses.

**IV.     The Agreement is Fair and Reasonable.**

Among other challenges and risks, it is possible that Plaintiffs will be found exempt under New York's janitor exemption. Plaintiffs also face the challenge of establishing the number of hours they worked for extended periods of time based largely on their recollections.

If Boykin is adjudged to be an exempt janitor under the NYLL, Boykin's minimum wage claim would fail because he was paid more than the per-unit pay rate (during the entire period of Boykin's employment, $10.00 per unit) required by the Building Service Industry Wage Order. This would reduce Boykin's damages by more than $28,328.00 (including lost liquidated damages. In addition, because of the FLSA's much shorter statute of limitations (2 or 3 years, depending on whether the violations are deemed willful), Boykin's overtime damages could be reduced by as much as $36,000 (including lost liquidated damages). Similarly, if Martinez is found to be exempt, he would have no claim for any damages relating to the period November 2019 through July 2020. He runs the further risk of losing his overtime damages for the period July 2020 through July 2021 if Defendants' violations are not deemed willful. In other words, he runs the risk that his damages will be reduced by $27,000.00 or more.

5

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

The parties were able to reach an agreement before incurring the costs and stress of further depositions, further motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016) (citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

Martinez' share of the settlement is $64,000.00. This amount is approximately 39% of his estimated maximum recovery. Boykin's share of the settlement is $41,562.00. This amount is approximately 36% of his estimated maximum recovery. Courts regularly approve lesser settlement amounts. *See, e.g., Santiago v. Agadjani*, 2024 U.S. Dist. LEXIS 186484, *10 (E.D.N.Y. Oct. 11, 2024) (collecting cases where judges have found recoveries of 13% and 15% to be reasonable).

Martinez' higher share of the settlement payment reflects the significantly higher number of hours Martinez can credibly claim to have worked to maintain his 68-unit building compared to Boykin's allegation of working, during most periods, 46-hour workweeks to maintain his 24-unit building. Plaintiffs' estimates indicate that Martinez has about 9 additional weeks of potential overtime damages compared to Boykin. Additionally, as described above, Boykin was compensated for the approximately 6 months of extra work he performed in 2021 at an additional building managed by Finger, while Martinez received only modest overtime payments for brief periods. Plaintiffs' counsel has met with both Plaintiffs regarding this Agreement, and they are in agreement with the apportionment.

## V. Plaintiffs' Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiffs' counsel is seeking $54,438.00 in combined disbursements and legal fees ($5,604.10 for disbursements, and $48,833.90 in legal fees). This represents a contingent legal fee of approximately 31.6% of the net value of settlement ($160,000.00 - $5,604.10 = $154,395.90 x 31.6%). This percentage is *less than* the contingency fee of 33.33% provided by Plaintiffs' retainer agreement with counsel (**Exhibit 2**). The reimbursement for costs/disbursements is largely attributable to filing fees, service of process, deposition and mediation costs. Invoices/receipts for the larger expenses and costs are attached hereto as Exhibit 3. These expenses were reasonable and necessary for the prosecution of Plaintiffs' claims.

Contingency fees of one-third are routinely approved in this Circuit. *See, Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017);

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

*Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015). The percentage method is the preferred method in this Circuit; however, the lodestar method is used as a "cross-check" to ensure that the amount is not unreasonable. *Chen*, 2021 U.S. Dist. LEXIS 189942 *17-18 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) and (*Beckman v. Keybank*, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (granting attorneys' fees where award was 6.3x the lodestar amount)).

My firm's time spent on this matter is set forth in the accurate, detailed and contemporaneous records attached hereto as **Exhibit 4**. Similarly, **Exhibit 5** is the history bill of co-counsel, Miller Law, PLLC ("Miller Law").[1] The attached history bills show a combined, total lodestar of $81,774.50 ($59,769.50 for Rapaport Law and $22,005.00 for Miller Law). The requested fees ($48,833.90) are *less than* the lodestar ($81,774.50). This is appropriate, as courts have approved multipliers of 2 or more in similar cases. *See Castillo v. Cranes Express, Inc.*, No. 18-cv-1271, 2018 WL 7681356 *5 (E.D.N.Y. Dec. 12, 2018) (approving one-third contingency fee that was 1.26 lodestar multiplier); *see also Munecas v. Bold Food, LLC,* No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *Sakiko Fukiwara v. Sushi Yasuda Ltd*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").

Our hourly rates set forth in the attached history bills are consistent with the rates that have been approved by courts in the Southern District in similar FLSA cases (including in cases handled by Rapaport Law and Miller Law). The lodestar reflects a billing rate of $450/hr for attorneys Meredith R. Miller (Miller Law) and Marc Rapaport (Rapaport Law); $115/hr for Karina Gulfo, an experienced paralegal at Rapaport Law; and $95/hr for Samantha Bourdierd, a legal assistant at Rapaport Law. Courts have determined that an hourly rate of $450 is appropriate for experienced wage and hour litigators in the Southern District of New York. *See Alvarez v. Fine Craftsman Grp., LLC*, No. 20-CV-10452, 2024 WL 3730569, at *3 (S.D.N.Y. Aug. 6, 2024) (collecting cases and noting that "[c]ourts in this district have approved hourly rates for partners of $600 per hour in FLSA and NYLL suits"); *Palaguachi v. All City Remodeling, Inc.*, 2018 U.S. Dist. LEXIS 241268, at *6 (S.D.N.Y. Apr. 20, 2018) (approving hourly rate of $450.00 for partner in FLSA matter).

Moreover, the hours spent on the matter were reasonable and necessary in the prosecution of Plaintiffs' claims, and included successful opposition to a motion for partial dismissal (ECF No. 65) and meaningful discovery, including the deposition of one of Finger's former property managers.

The attorneys and staff at Rapaport Law and Miller Law who were involved in this case, and whose time is reflected in the attached billing records, are:

---

[1] The fact that the requested attorneys' fees are split between Rapaport Law and Miller Law does not affect the amount of fees requested. Plaintiffs' counsel worked jointly on this case, as they have on well over a dozen other cases for more than fifteen years. The total amount of fees requested remains 31.6% of the net value of the settlement.

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

1. **Marc Rapaport**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty-five years of experience litigating employment matters, including matters touching upon nearly every aspect of wage and hour law, on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. For approximately the past ten years, my law practice has particularly focused on representing low-wage superintendents, porters, and other maintenance workers who are employed at apartment buildings in New York City.

2. **Meredith R. Miller**

Meredith R. Miller has served as Of Counsel to Rapaport Law for almost twenty years. Since 2006, she has been a member of the faculty at Touro University, Jacob D. Fuchsberg Law Center, where she teaches employment law, business organizations and contracts. She has served as co-counsel with Mr. Rapaport on many wage cases representing immigrant and low-wage workers.

3. **Karina Gulfo**

Karina Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Martinez. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm. In this matter, Ms. Gulfo served as a primary point of contact for Mr. Martinez. Ms. Gulfo has played the same, crucial role for our firm's Spanish-speaking clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil matters.

4. **Samantha Bourdierd**

Samantha Bourdierd has been a legal assistant at Rapaport Law Firm since February 2024. Ms. Bourdierd is fluent in Spanish, which has made her a valuable resource for Spanish-speaking clients. This was particularly important in this case, where she handled communications with Mr. Martinez. Ms. Bourdierd communicated in Spanish with Martinez during the discovery process.

* * *

Magistrate Judge Katharine H. Parker
United States Magistrate Judge
January 22, 2025

      We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

                        Respectfully yours,

                        */s/ Marc A. Rapaport*

                        Marc A. Rapaport

Encs. (Exhibits 1 – 5)

cc:     (*Via ECF only*)